## Commonwealth v. Marie Gas & Oil Co.

*James H. Duff*, Attorney General, and *David R. Perry*, Deputy Attorney General, for Commonwealth.

*George S. Goldstein*, and *Hull, Leiby & Metzger*, for defendant.

MAYS, J., March 7, 1944.—This is an appeal from the reassessment made by the Commonwealth against Marie Gas & Oil Company, a corporation, under the Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended, 43 PS §751 et seq.

The parties stipulated and agreed that the testimony taken, together with a copy of letter dated March 15,

1943, addressed to Marie Gas & Oil Company, the appeal of Marie Gas & Oil Company, the answer of the Commonwealth, and all papers of record in the case, should constitute a full and complete record for the purpose of argument and determination thereon.

There is no controversy in regard to the amount of unemployment compensation contributions in the event that the court finds the relationship of employer and employe and because thereof liability for payment of such contributions. The amount agreed upon is $3,-956.93.

The pertinent portions of section 4 of the Unemployment Compensation Law, supra, as last amended by the Act of May 27, 1943, P. L. 717, 43 PS §753, read as follows:

"(h) 'Employe' means every individual, whether male, female, citizen, alien or minor, who is performing or subsequent to January first, one thousand nine hundred thirty-six, has performed services for an employer in an employment subject to this act."

"(i) 'Employer' means every—(1) individual, (2) copartnership, (3) association, (4) corporation (domestic or foreign), (5) the legal representative, trustee in bankruptcy, receiver or trustee of any individual, copartnership, association, or corporation, or (6) the legal representative of a deceased person, (I) who or which employed or employs any employe (whether or not the same employe) in employment subject to this act for some portion of each of some twenty (20) days during the calendar year one thousand nine hundred thirty-six, or any calendar year thereafter, each day being in a different week, or (II) who or which has elected to become fully subject to this act, and whose election remains in force . . ."

"(j) (1)—'Employment' means all service performed prior to the first day of January, one thousand nine hundred forty-two, which was employment as defined in this section prior to such date . . . for remunera-

tion or under any contract of hire, express or implied, written or oral."

## Findings of fact

1. Defendant was the owner of about 35 gasoline filling stations in and about Allegheny County.

2. On December 1, 1934, Marie Gas & Oil Company and Charles E. Hallstein entered into a written contract which reads in part as follows: "That the Lessor [Marie Gas & Oil Co.] has hereby let and rented unto Lessee [Charles E. Hallstein] . . . all that certain lot, piece or parcel of land . . . at 7342 Butler Street, Pittsburgh, Pennsylvania", together with a building consisting of office and shelving, and two gasoline pumps, also various equipment, such as electric lamps, hose, etc.

It was agreed that the "Lessee shall keep such books and records as will accurately show the number of gallons of gasoline and other motor fuels sold at the demised premises and will permit the Lessor to examine and inspect such books and records at any time and from time to time when Lessor desires so to do. Lessor or Lessee shall have the right and option to cancel this lease at any time during said term on giving 24 hours notice in writing . . . of his intention so to do". There is no statement therein as to what rental shall be paid. However, attached thereto is a memorandum agreement which purports to be dated December 1, 1934, in which it is stated that a stipulation as to rental was overlooked and that the rental to be paid by the lessee shall be a sum equivalent to 1 cent per gallon for all gasoline sold by lessee at said station, said rental to be paid daily.

3. On December 1, 1934, the same parties, Marie Gas & Oil Company and Charles E. Hallstein, entered into an agreement wherein Marie Gas & Oil Company, the seller, agreed to sell and deliver by tank wagon to Hallstein, the buyer, gasoline at 2 cents under the tank wagon price.

4. Said Charles E. Hallstein, in August 1930, started working as a filling station attendant at a fixed salary on premises located on Butler Street at the Highland Park Bridge and owned and operated by Marie Gas & Oil Company. He remained there for about eight years, then was moved to 6602 Hamilton Avenue, remaining there until May 1942.

5. Theodore C. Russell, beginning in June 1941 and ending in May 1942, was employed by Marie Gas & Oil Company as a filling station attendant. At first he worked at the West End Station, receiving a wage of $18 per week. In September 1941, he left that station to go to the Carnegie Station, at which time he executed papers similar to those signed by Hallstein.

6. Marie Gas & Oil Company, under similar arrangements with about 28 other individuals, provided for the like operation of gasoline filling stations owned by them.

7. For a long period of time a checker of Marie Gas & Oil Company almost daily called upon the operators of these stations, making out certain reports and receiving the money that was taken in during that particular day's business; and it was this checker who, from time to time, would set the time for these operators to open and the time to close.

8. At various times, and for various periods of time, the operators' names were displayed at the respective stations, while the mercantile taxes were paid by Marie Gas & Oil Company. No cash investments were made by these operators.

9. In some instances, the operators paid unemployment compensation and workmen's compensation. Some of the operators were permitted to and did sell other products than those furnished by Marie Gas & Oil Company, such as peanuts, popcorn, cigarettes, and chewing gum, and retained the entire proceeds therefrom. They also were permitted to wash and grease cars.

10. Marie Gas & Oil Company selected its operators, directed them what they should do and the manner in which it should be done, fixed the prices at which the products were sold, and had the right, because of the nature of the contract entered into, to discharge.

### Discussion

The Commonwealth contends that these operators who worked upon the premises owned by Marie Gas & Oil Company during the years in question were employes of Marie Gas & Oil Company within the meaning of the Unemployment Compensation Law, and that therefore it is liable for the contributions on their earnings.

It is the contention of Marie Gas & Oil Company that they were not employes but what services were rendered by them were in the pursuit of an independent calling.

The burden is upon the Commonwealth to prove that there was the relationship of employer and employe. After reading all the testimony, we have without any hesitancy come to the conclusion that the burden has been met and that these operators are not engaged in the pursuit of an independent calling but are employes within the generally-accepted meaning of that term. The employer, Marie Gas & Oil Company, has so contracted that there is almost an absolute control over the operators and the manner and the means of doing their work.

Furthermore, they were employes within the meaning of the Unemployment Compensation Law since they were receiving remuneration for rendering services not excepted by the statute, and thus were engaged in an employment subject to the act.

What is contained in the alleged lease and sale agreement is certainly not helpful to the contention of Marie Gas & Oil Company. The lease purports to have been executed in 1934 and relates to 7342 Butler Street,

Pittsburgh. The record fails to disclose that Hallstein was upon those premises. As already pointed out, he was at two other places during the term of his employment. He states in effect that at least one of these agreements was executed as late as 1938.

We quote with approval what was stated by this court in Commonwealth v. Wertz et al., 53 Dauph. 353, 359:

"The 'Stipulations' were adroitly framed to suggest a different relation, but, as was aptly stated by Cardozo, C. J., in an analogous situation, 'the difference is a semblance only, or so the triers of the facts might find': Glielmi v. Netherland Dairy Company, Inc., et al., 254 N. Y. 60, 171 N. E. 906 (1930); American Writing Machine Company v. Unemployment Compensation Board of Review, supra. Also, it is not the wording of an instrument but what is done under it which determines the relationship of the parties: Industrial Commission v. Northwestern Mutual Life Insurance Company, 103 Colo. 550, 88 P. 2d 560 (1939); American Writing Machine Company v. Unemployment Compensation Board of Review, supra.

"Accordingly, it is clear that the 'Stipulations' were nothing but a subterfuge, poorly conceived by the defendant in an attempt to evade his responsibility under the statute and defeat the very purpose of its enactment."

Much more need not be said, except to point out the authorities that we believe support the conclusion that these operators were employes and not engaged in the pursuit of an independent calling.

In Flaherty v. Trout et al., 290 Pa. 315, the Supreme Court of Pennsylvania held (syllabus): "The fact that a contract could be terminated at any time by either party is a strong circumstance against the theory of an independent contractor"; and "That the person to do the work is to be paid by quantity, rather than by the day or hour does not determine the status of the parties."

In American Writing Machine Co. v. Unemployment Compensation Board of Review, 148 Pa. Superior Ct. 299, 302, Judge Rhodes said:

"The courts of other jurisdictions, in actions to determine under unemployment compensation laws the legal character of services rendered, have considered the absolute right of the recipient to terminate them as tending to constitute the person rendering the services an employee. . . . 'The power to terminate a contract for personal service at any time without liability is an important factor in arriving at a conclusion as to whether the individual is free of control and direction, "because the right immediately to discharge involves the right of control." ' "

In Joiner v. Sinclair Refining Co., 48 Ga. App. 365, 172 S. E. 754, there was an action to recover against an employer for injury incurred at work. The Court of Appeals held that there could be no recovery except under the Compensation Act. There, as here, there was a contract between an oil company and the operator of a service station which provided that the operator should act as a sales agent and sell at retail products furnished him by the company and on such terms and at such prices as the company authorized, his compensation to be a stipulated commission on the sales, and that either party could terminate the contract at will without cause.

A filling station operator was held to be an employe of an oil company within the meaning of the Workmen's Compensation Act in Crowder v. State Compensation Commissioner, 115 W. Va. 12, 174 S. E. 480. The court overruled the contention that the operator was an "independent contractor", the conclusion being reached especially in view of the fact that the company retained the right to supervise the services of the "agent", to direct the manner of their execution, and summarily to discharge the "agent". See also Magnolia Petroleum Co. v. Pierce, 132 Okla. 167, 269 Pac. 1076,

where there was involved a contract very similar to the one in the instant case, and the court held that the relation of employer and employe was created.

The appellant relies principally upon Texas Co. v. Higgins, 118 F. (2d) 636. L. Hand, J., definitely points out that in that case certain important factors present in the instant case did not exist, viz, the "right of the putative employer to direct the details and means by which the result is accomplished".

In the Higgins case it is definitely stated (p. 639):

"Nor did it 'furnish' any 'tools' to Thomas or any 'place to work.' Finally, he was not 'subject to' the plaintiff's 'direction . . . as to the means and methods for accomplishing the result'; i. e., how its products should be sold. Thus, not a single differentia of those which the regulation lays down was here satisfied."

We have already pointed out that in the instant case the employer, Marie Gas & Oil Company, did furnish not only the tools but the place to work, and in many respects the operators were subject to the direction of the checker and other servants of the employer.

### Conclusions of law

1. Charles E. Hallstein, Theodore C. Russell, and other operators performing services for remuneration in the place of business of Marie Gas & Oil Company in the manner, under the conditions, and subject to the restrictions described above, were employes within the generally-accepted meaning of that term and within the meaning of the Unemployment Compensation Law, supra.

2. The master, Marie Gas & Oil Company, was a liable employer within the meaning of the act as last amended, supra.

3. Judgment must be entered in favor of plaintiff and against defendant in the sum of $3,956.93.

And now, to wit March 7, 1944, judgment is hereby directed to be entered in favor of plaintiff and against defendant in the sum of $3,956.93.